**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES LEE DORSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-00525 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JACQUELINE MITCHELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Lee Dorsey is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). This suit arises from dental care that Dorsey received while he was incarcerated at Stateville Correctional Center ("Stateville"). In his Second Amended Complaint ("SAC"), Dorsey claims that the conduct of Defendants Christine Luce and Dr. Jacqueline Mitchell surrounding the removal of one of his teeth amounted to unconstitutionally deficient dental care. Pursuant to 42 U.S.C. § 1983, Dorsey asserts a single claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants jointly moved for summary judgment. (Dkt. No. 234.) For the reasons that follow, their motion is granted.

**BACKGROUND**

The following facts are drawn from the parties' submissions under Local Rule 56.1 and are undisputed unless otherwise noted.

Plaintiff Dorsey was incarcerated at Stateville throughout January and February 2016, the times relevant to this case. (Pl.'s Resp. Defs.' Statement Facts ("PRDSF") ¶ 1, Dkt. No. 239.) Defendant Mitchell is a dentist who worked on staff at Stateville, providing general dentistry

services to inmates from 2002 until she retired in 2017. (*Id.* ¶ 2). Defendant Luce is a dental assistant who worked at Stateville during the relevant timeframe. (*Id.* ¶ 3). Another dentist, Dr. Richard Orenstein, and an oral surgeon, Dr. Frederick Craig, also participated in the course of treatment that prompted this case. (*Id.* ¶¶ 21–24.) However, neither Dr. Orenstein nor Dr. Craig is currently a defendant in this case.[1]

Early in January 2016, Dorsey began to request dental treatment for an issue concerning one of his teeth. (Defs.' Resp. Pl.'s Statement of Additional Facts ("DRPSAF") ¶ 1, Dkt. No. 241). Specifically, Dorsey sent a request dated January 1, 2016, addressed to Dr. Mitchell, complaining that a piece of his tooth had just broken off, leaving the area around the tooth "extremely sensitive." (*Id.* ¶¶ 5, 6.) This request was marked "urgent" and expressed concern that the area could become infected. (*Id.* ¶¶ 2, 4.) At the end of the written request, Dorsey also requested a cleaning. (PRDSF ¶ 16.) Although the request was dated January 1, it was not received by the Stateville dental clinic until January 7, 2016. (*Id.*) Requests for dental care submitted to the dental clinic were required to be documented in the clinic's logbook. (*Id.* ¶ 11.) On January 7, Dorsey's request was logged in the clinic logbook and he was scheduled for an appointment on January 21, 2016. (*Id.* ¶ 12.) Despite being marked as "urgent," dental staff at Stateville did not find the request for treatment to be a dental emergency. (DRPSAF ¶ 13.)

While waiting for his January 21 appointment, Dorsey sent another request marked as "urgent" to Dr. Mitchell. (PRDSF ¶ 17.) This request was dated January 10, 2016, and was

---

[1] Dr. Orenstein was voluntarily dismissed as a defendant on Dorsey's motion. (Dkt. Nos. 195, 196.) The dismissal was without prejudice. (Dkt. No. 196.) Dr. Orenstein appears to have been initially named as a defendant by mistake. (Dkt. No. 195.) Dr. Craig, who Dorsey did intend to name as a defendant, is now deceased. (*Id.*) Although Dorsey named Dr. Craig as a defendant in his original *pro se* complaint (Dkt. No. 1), Dr. Craig was not named in the First Amended Complaint or the SAC, which were filed by Dorsey's assigned pro bono counsel. (*See* Dkt. Nos. 21, 92.)

received by the clinic on January 14, 2016. (*Id.*) The request repeated Dorsey's belief that his tooth was broken and asserted that he now believed it to be infected. (*Id.*) In response to this request, Dorsey was scheduled for an appointment the next day, January 15, 2016. (*Id.*) On January 15, Dorsey was examined and treated by Dr. Orenstein. (*Id.* ¶ 18.) Dr. Orenstein prescribed Dorsey penicillin and ibuprofen and scheduled him to have his tooth extracted when he next came to the clinic for his January 21 appointment, which remained scheduled. (PRDSF ¶ 18; DRPSAF ¶¶ 15–16.)

On January 21, Dr. Mitchell surgically extracted Dorsey's tooth. (PRDSF ¶ 19.) Dorsey claims that Dr. Mitchell was attending to multiple patients in the dental clinic while also working to extract his tooth.[2] (DRPSAF ¶ 17.) Dr. Mitchell admits that it was customary for the hygienist and two dentists on duty to rotate between patients who were in the clinic at the same time but in different stages of treatment. (*Id.*) However, she does not admit that is what happened in this instance, as she has no independent memory of treating Dorsey. (DRPSAF ¶ 17; Defs.' Ex. 1, Mitchell Dep. 34:4–34:14, Dkt. No. 236-1.) The parties further disagree on the outcome of the tooth extraction. (PRDSF ¶ 19.) Dr. Mitchell claims that she extracted Dorsey's tooth in its entirety, leaving nothing behind in his jaw socket, and then provided appropriate post-operative

---

[2] This assertion was made in Dorsey's deposition testimony, where he was, in turn, quoting from a grievance that he filed while at Stateville. (DRPSAF ¶ 17.) Defendants contend that a grievance is hearsay that cannot be relied on to defeat summary judgment. Their argument misses its mark, however. Prison grievance forms typically do not fall within the business records exception to the bar on hearsay, and so are usually an inadmissible form of evidence. *Heard v. Shicker*, No. 14-cv-1027-JBM, 2018 WL 11272881, at *2 (C.D. Ill. April 23, 2018). However, at the summary judgment stage, the proffered evidence need only be admissible in **content**, not in form. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir. 1994). Dorsey is describing events he observed personally, not repeating a hearsay statement. Because Dorsey "can testify from personal knowledge as to what he describes in his grievances at trial, the court may rely on them in assessing Defendants' summary judgment motion." *Wilson v. Wexford Health Sources, Inc.*, 726 F. Supp. 3d 881, 900 (N.D. Ill. 2024).

instructions. (*Id.*) Dorsey disputes this claim and maintains that he could feel a bone protruding from his gums after the extraction. (*Id.*)

Following the extraction, Dorsey reached out to request follow-up care at least once. (*Id.* ¶ 12.) He claims he sent written requests for dental treatment on January 24 and January 26, 2016 (*id.* ¶ 15), and that Luce, the dental assistant, was aware of these two written requests. (*Id.* ¶ 7, 13, 15.)[3] Dorsey also claims that on January 28 he requested a follow-up appointment with Dr. Mitchell during a face-to-face interaction with Luce. (*Id.* ¶ 7.) Luce asserts that she did not ignore any of Dorsey's requests for care. (*Id.* ¶ 13.) Dorsey disputes that assertion. (*Id.*) Also on January 28, the clinic received and logged a written request for dental care from Dorsey, requesting immediate attention.[4] (PRDSF ¶¶ 12, 20.) He was scheduled to be seen for an appointment the next day, January 29, 2016. (*Id.* ¶ 20.)

On January 29, Dr. Orenstein examined Dorsey and noted that his lingual bone was exposed around the extracted tooth. (*Id.* ¶ 21.) Dorsey did not want Dr. Orenstein to debride the area at that time. (*Id.*) Dr. Orenstein then scheduled Dorsey to be seen by Dr. Craig, the on-site oral surgeon, on February 1, 2016. (*Id.*) At the February 1 appointment, Dr. Craig examined Dorsey, instructed him to rinse his mouth with warm saline solution four times a day, and scheduled him for a follow-up visit on February 24, 2016. (*Id.* ¶ 23.) On February 11, 2016, Dr. Orenstein made a notation in Dorsey's dental chart that a review of a periapical x-ray showed

---

[3] Dorsey again relies on statements made in his prison grievance form. Here, the grievance form, if offered for the truth of the statement that the requests were sent on January 24 and January 26, would be inadmissible hearsay not falling within an exception. *Heard*, 2018 WL 11272881, at *2.

[4] It is reasonable to infer that the request received by the clinic on January 28 was one of the written requests that Dorsey claims he sent on January 24 or 26. However, the request is not dated, so it is unclear when it was sent, and there is only evidence that one letter was ever received, not both.

that Dorsey's tooth was completely removed from the socket during the January 21 extraction.

(*Id.* ¶ 24.)

Following the events described, Dorsey initiated this lawsuit, eventually filing the SAC alleging that Defendants were deliberately indifferent to his medical needs in violation of his rights under the Eighth Amendment. (Dkt. No. 92.)

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Material facts are those that might affect the outcome of the suit, and a genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the "evidence and all reasonable inferences in favor of" the non-moving party. *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). However, the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (internal quotation marks omitted). Bare assertions by the non-moving party that an issue of fact exists are not enough to create a genuine factual dispute. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). When the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial," a court must grant summary judgment. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

In the prison context, medical care that is "grossly inadequate" can constitute a prison condition that violates the Eighth Amendment's bar on cruel and unusual punishment. *Lockett v. Bonson*, 937 F.3d 1016, 1022 (7th Cir. 2019) (internal quotation marks omitted). Courts conduct a two-part analysis in considering a claim that deficient medical care violated the Eighth Amendment. First, the plaintiff must establish that he suffered from an objectively serious medical condition. *Id.* Second, he must establish that the defendants were deliberately indifferent to that condition. *Id.* Deliberate indifference is beyond negligence or even malpractice. *See Cesal v. Moats*, 851 F.3d 714, 725 (7th Cir. 2017) (noting the "important difference between ordinary, or even aggravated, medical malpractice, and an Eighth Amendment violation"). A deliberately indifferent defendant must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The test requires a culpable state of mind. The defendant must be subjectively indifferent to the plaintiff's pain or medical peril. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). Where a medical professional has exercised professional judgment, this can be a high bar. In the present case, state-of-mind evidence sufficient to defeat summary judgment would likely need to be in the form of "proof that the defendant's treatment decision departed so radically from accepted professional judgment, practice, or standards that a jury may reasonably infer that the decision was not based on professional judgment." *Id.* at 663 (internal quotation marks omitted). The parties do not spend time debating whether Dorsey faced a serious medical condition. Rather, Defendants argue that they were not deliberately indifferent to his condition.

There is no suggestion that Dorsey was denied dental care. Instead, Dorsey's theory of deliberate indifference is premised on delayed treatment. "[D]elays are common in the prison setting with limited resources." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended*

6

(Aug. 25, 2016). But "an inexplicable delay in treatment which serves no penological interest" can support an inference of deliberate indifference. *Id.* When a plaintiff proceeds on such a theory, however, he must produce verifying medical evidence that the delay, rather than the underlying condition, caused harm. *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 680 (7th Cir. 2023). Expert testimony is sufficient but not always necessary to show the required causal connection between delay and harm. *Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010). So long as "the plaintiff offers evidence that allows the jury to infer that a delay in treatment harmed an inmate, there is enough causation evidence to reach trial." *Id.* at 624–25. Significantly, a "[p]laintiff's own testimony that he experienced untreated symptoms during the delay does not qualify as verifying medical evidence." *Johnson v. Obaisi*, No. 16 CV 4046, 2020 WL 433872, at *7 (N.D. Ill. Jan. 28, 2020). Having set out the applicable legal standards, the Court turns to the conduct of each Defendant.

## I.      Luce

Dorsey's claim against Luce is based on allegations that she ignored repeated requests for dental treatment: first, in letters on January 24 and 26, 2016, and then in person on January 28, 2016. As a dental assistant, however, there is no dispute that Luce had neither the training to make any treatment decisions regarding dental care nor the authority to schedule dental appointments for inmates. (PRDSF ¶¶ 9–10.) Prison employees other than doctors still bear a responsibility to ensure that inmates in obvious pain or medical danger receive treatment. Just as a prison "guard who is aware of complaints of pain and does nothing to help . . . is . . . exhibiting deliberate indifference," a dental assistant who similarly fails to act might be found at fault. *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015). But there is no evidence that is what happened in this case.

7

First, Dorsey has produced no admissible evidence that the requests he alleges he sent on January 24 and January 26, 2016, were ignored by Luce. While Dorsey disputes Luce's assertion that she did not ignore any requests from him, he does not cite evidence contradicting her statement. Rather, he cites a quotation from his grievance form stating that he sent the requests, with nothing to support the conclusion that the requests were received, but ignored, by Luce. (PRDSF ¶ 13.) The grievance itself states that on January 28, 2016, Luce told Dorsey she had received a written request from him.[5] (PRDSF Ex. A ¶ 4, Dkt. No. 239-1.) This is consistent with the dental clinic logbook entry and with Luce first learning of Dorsey's condition on January 28. Without any evidence that Luce received Dorsey's January 24 and January 26 requests prior to January 28, the Court cannot conclude that Luce was aware of Dorsey's pain at any point before January 28. Knowledge is a required element of a deliberate indifference claim, *Farmer*, 511 U.S. at 837; *Dobbey*, 806 F.3d at 940. With respect to the first two requests for treatment, Dorsey has not presented any evidence of knowledge.

Second, Dorsey alleges that when he saw Luce on January 28, he made a face-to-face request for follow-up dental care that was also ignored.[6] As discussed above, Luce had no authority to schedule an appointment with Dr. Mitchell for Dorsey, and Dorsey has not provided

---

[5] This statement would not be hearsay, as an opposing party's statement under Fed. R. Evid. 801(d)(2)(A).

[6] The evidentiary support for this allegation is unclear and warrants some explanation. In Dorsey's SAC, he alleges that he informed Luce of his dental condition in person on January 28, and that Luce made no effort to help him get an appointment with Dr. Mitchell, despite being aware of his pain. (SAC ¶¶ 13–18, 31, 35.) The parties' Local Rule 56.1 statements agree that this allegation is one basis for Dorsey's suit, but otherwise say nothing about the verbal request. (PRDSF ¶ 7.) No statements in Dr. Mitchell's Deposition, Dorsey's Deposition, or Luce's Declaration refer to the alleged January 28 interaction. (Dkt. Nos. 236-1, 236-2, 236-3.) The only part of the record to address the January 28 verbal interaction is Dorsey's prison grievance form. (PRDSF Ex. A ¶ 4, Dkt. No. 239-1.) The form states that Dorsey explained his dental problem to Luce but, strangely, also seems to suggest that Luce did not ignore him and in fact told him he would be seen the next day. Regardless, while there is a dispute about whether Luce ignored Dorsey, that fact is immaterial as explained below.

any evidence to rebut Luce's assertion that she did not ignore any of Dorsey's requests.[7] But, even if a jury could infer that Luce ignored a verbal request by Dorsey on January 28, the dental clinic plainly did not ignore his written request. Dorsey's written request for follow-up care was received and logged that same day, and an appointment was scheduled for the next day. That next day, January 29, Dorsey was in fact seen by a dentist. Given that Dorsey's written request, received January 28, resulted in care on January 29, no "inexplicable delay" resulted from Luce's conduct.[8] *Petties*, 836 F.3d at 730. A delay caused by Luce's conduct is integral to Dorsey's deliberate indifference theory and, with respect to January 28, he has not provided any evidence of delay. Accordingly, there is no genuine dispute as to any fact material to Luce's alleged deliberate indifference. She is entitled to judgment as a matter of law.

## II. Defendant Mitchell

Dorsey's SAC focuses on the allegedly ignored requests for dental treatment on January 24 and January 26. However, Dorsey also argues that Dr. Mitchell's handling of his requests prior to the tooth extraction, as well as how she conducted the extraction itself, provide bases for liability. The Court addresses each contention in turn.

### A. Pre-Extraction Requests

Dorsey first takes issue with how his request for dental care, dated January 1, 2016, and received January 7, 2016, was handled. The request was treated as routine, not as an emergency,

---

[7] Dorsey cites only evidence regarding his written requests, not the verbal one. (PRDSF ¶ 13.)

[8] Generally, the delay in care must be "significant" or "non-trivial" as assessed in context. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). In some contexts, an unconstitutional delay in medical treatment is more appropriately measured in hours, rather than days. *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (finding that hours of needless pain is enough to constitute harm). It is not clear that this case presents one of those situations. Regardless, there is nothing in the record here to suggest that, had Luce acted on Dorsey's verbal request, he would have been seen by a dentist any sooner than the next day, when he was in fact seen.

resulting in a responsive appointment being scheduled for January 21, 2016. Had the request been treated as an emergency, the IDOC Administrative Directive required a dental examination no later than the next working day after the emergency. (Defs.' Ex. 9, IDOC Admin. Directive 4, Dkt. No. 238-9.) Dorsey's written request states that he believed his tooth to be broken, that the tooth was extremely sensitive, and that he thought it could become infected. Although the parties do not dispute that Dorsey was experiencing pain when he wrote his letter, the request does not actually state he was in pain. Based on the information provided in the request, the dental staff, exercising professional judgment, deemed that this was not a case that should be treated as an emergency.

Courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (internal quotations omitted). Dorsey has not provided any evidence to show that the decision to treat this request as routine unconstitutionally diverged from accepted professional standards. Although Dr. Mitchell testified in her deposition that pain, swelling, and infection are possible grounds to find that an emergency exists, the request does not state that any of those conditions existed at the time the letter was sent. (DRPSAF ¶¶ 7–8.) Moreover, there is no evidence that the response of a "minimally competent professional" to a request identifying those conditions would invariably be to schedule an immediate appointment. *Walker*, 940 F.3d at 965. The response of the dental staff, scheduling an appointment for routine treatment at a future date, may have been mistaken, but it did not "radically" depart from accepted professional judgment. *Whiting*, 839 F.3d at 663. With respect to Dorsey's January 1 request for care, there is no evidence in the record that Dr. Mitchell had the required state of mind to support a claim for deliberate indifference.

But Dorsey continued to suffer pain related to his tooth and made another request for dental care. The dental clinic received this request for dental care on January 14, and the request explicitly stated that Dorsey believed his tooth was infected. Had Dr. Mitchell ignored this request, Dorsey might have a strong case to defeat summary judgment. However, just the opposite happened. In response to this second request for immediate care, the dental clinic scheduled Dorsey to be seen by a dentist the next day. Dr. Orenstein then examined and treated Dorsey on January 15. This reaction sharply contrasts with the near "total unconcern for the prisoner's welfare in the face of serious risks" indicative of deliberate indifference. *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (internal quotation marks omitted).

### B.      January 21st Extraction

Dorsey next raises that Dr. Mitchell was attending to multiple patients at once as she performed his tooth extraction, seeming to suggest that this led to her harming him during the procedure. The harm he alleges was a painful exposed lingual bone in the area of the tooth extracted by Dr. Mitchell. Dr. Mitchell does not admit or deny that she was rotating between patients during the extraction. But she does admit that such an approach would be customary in the Stateville dental clinic. Regardless, these are not material considerations because Dorsey advances a theory of deliberate indifference. Construing these facts in the light most favorable to Dorsey, a jury might infer that Dr. Mitchell became distracted and harmed Dorsey during the extraction. But that inference suggests negligence or malpractice at best, not deliberate indifference. *Cesal*, 851 F.3d at 725. Nothing presented by Dorsey supports an inference that Dr. Mitchell intended to harm him or that she disregarded a known and excessive risk to his health or safety when she removed his tooth. *Farmer*, 511 U.S. at 837.

### C.    Post-Extraction Requests

Consideration of Dr. Mitchell's conduct following the January 21 extraction closely parallels the analysis of Luce's conduct above. As with Luce, Dorsey alleges that Dr. Mitchell ignored requests for follow-up care related to the tooth extraction that Dorsey claims he sent on January 24 and January 26. However, as described above, there is no evidence that Dr. Mitchell was aware of these requests before January 28. Dr. Mitchell cannot be deliberately indifferent to pain of which she was not aware. *Farmer*, 511 U.S. at 837. The first documented letter to the dental clinic requested immediate treatment and was received on January 28. Dorsey was promptly scheduled for a follow-up appointment—and was seen—on January 29. Dr. Mitchell cannot be held liable for a delay when no meaningful delay occurred. *Berry*, 604 F.3d at 441. IN short, there is no genuine dispute as to any material fact and Dr. Mitchell is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade*, 648 F.3d at 517.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 234) is granted. The Clerk will enter judgment in favor of Defendants Luce and Dr. Mitchell as to all claims against them.

ENTERED:

Dated:  March 23, 2026

_____
Andrea R. Wood
United States District Judge

12